# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kenneth E. Andersen and Dell D.
Holm, on behalf of themselves and
all others similarly situated,

and

William K. Bulmer, II, on behalf
of himself and all others similarly
situated,

                      Plaintiffs,

vs.

The County of Becker, Minnesota,
Tim Gordon, in his capacity as Sheriff
of Becker County, and Joseph H.
McArthur, in his capacity as Captain
in the Becker County Sheriff's
Department,

                      Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 08-5687 ADM/RLE

---

Jeffrey A. Abrahamson, Esq., Mara R. Thompson, Esq., and Daniel C. Bryden, Esq., Sprenger &
Lang, PLLC, Minneapolis, MN, appeared for and on behalf of the Plaintiffs.

Susan M. Tindal, Esq., and Jon K. Iverson, Esq., Iverson Reuvers, Bloomington, MN, appeared
for and on behalf of the Defendants.

---

## I. INTRODUCTION

On August 14, 2009, the undersigned United States District Judge heard oral argument

on Defendants Becker County, Tim Gordon, and Joseph H. McArthur's (collectively

"Defendants") Motion for Summary Judgment [Docket No. 38] and Plaintiffs Kenneth E.

Andersen ("Andersen"), Dell D. Holm ("Holm"), and William K. Bulmer, II's ("Bulmer")

(collectively ("Plaintiffs") Motion for Summary Judgment on Counts VI, VIII, and IX [Docket

No. 47].  Plaintiffs allege violations of the First, Fourth, Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution; Article I, Sections 6, 7, and 10 of the Minnesota

Constitution; 18 U.S.C. §§ 2510-22; Federal Common Law; Minn Stat. § 481.10, subd. 2; Minn

Stat. § 626A.02; Minnesota Common Law; and Misappropriation of Attorney Work Product

under Minnesota Law.  1st Am. Compl. [Docket No. 3] ¶¶ 75-126.  For the reasons set forth

below, Defendants' Motion is granted in part and denied in part, and Plaintiffs' Motion is denied.

## II.  BACKGROUND[1]

On June 14, 2007, a Complaint was filed in Becker County District Court charging

Andersen with second degree murder.  Tindal Aff. [Docket No. 45] Ex. D at 1.  Andersen was

booked into the Becker County Jail (the "Jail") on June 19, 2007.  Andersen Decl. [Docket No.

57] ¶ 2.  He remained in the Jail until June 13, 2008, after which he began serving his sentence in

Rush City, Minnesota.  Hodgson Aff. [Docket No. 43] ¶ 6.  Holm was booked into the Jail on

May 7, 2008 and remained there until March 30, 2009.  Id. ¶ 5.  Holm pled guilty to Felony

Assault with a Dangerous Weapon and is currently serving a 36-month sentence.  Tindal Aff.

Exs. F, G.  Bulmer represented Andersen in his criminal case.  Bulmer Decl. [Docket No. 59] ¶

2.  Bulmer worked at the Giancola Law Firm, PLLC until January 2008, at which time he left the

firm.  Id. ¶ 3.  Bulmer continues to represent Andersen in the criminal case.

Becker County contracts with Reliance Telephone, Inc. ("Reliance") to install and

operate the inmate phone system at the Jail.  Gordon Aff. [Docket No. 25] ¶¶ 1, 2.  When an

---

[1] On a motion for summary judgment, the Court views the evidence in the light most
favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  As
both parties have moved for summary judgment, any disputed facts are noted.

inmate is booked into the Jail,[2] Jail staff reads a warning to the inmates informing them that the telephones for inmate use are monitored and recorded and that an inmate has a right to a non-recorded, privileged call with an attorney. Tindal Aff. Ex. I (Hodgson Dep.) at 26-27. The warning read by Jail staff does not inform inmates about how to make an unrecorded call to an attorney. Id. at 27. The inmate is also made aware of the inmate handbook and is either given a copy or told where to locate one in the inmate common area. Id. at 37. Addressing inmate phone calls, the handbook provides: "Any non-attorney/client privileged phone calls made from the Becker County Jail will be monitored and/or recorded." Id., Ex. 3 (Inmate Handbook) at 9. Signs posted next to the inmate phones state, "All phone calls and messages to and from the Becker County Jail are monitored and/or recorded. This includes the visiting booths. Exceptions are phone calls made to an attorney." Id., Ex. 5. The Jail records inmate calls for purposes of Jail security, to prevent escapes, and to aid in inmate well-being such as suicide prevention. Id. at 116. It also aids staff in monitoring inmates on work-release programs. Id.

Also at the time of booking, an inmate is told how to arrange for a private attorney-client call. Id. at 53. If an inmate requests a call to an attorney who is not known to be an attorney by the Jail staff, the inmate must provide the attorney's phone number in writing so staff can verify that it is an attorney number. Id. at 54. The staff then forwards the phone number to Reliance who confirms the number is that of an attorney and designates the number as "private." Id. at 58. Jail staff can also make a phone number "private" if they confirm that the number does, in fact, belong to an attorney. Id. Once a number is marked as "private," it is placed on "the List" and

---

[2] The Jail changed its procedure slightly in December 2008 as discussed infra. The procedure recounted here is the procedure the Jail followed at the time Andersen and Holm were booked into the Jail.

Reliance will not record the phone call. Id. at 59. The same process is required for placing the phone number of an attorney's private investigator on the List. Id. at 79. Attorneys cannot directly contact inmates and must call the Jail and have a staff member inform the inmate that the inmate should call his attorney. Id. at 65. The Jail policy is not to allow attorney cell phone numbers to be included on the List because of potential for abuse, but occasionally, exceptions are made. Id. at 84-86, 89. The system does not monitor phone calls while the conversation is taking place; they can only be listened to after the call is completed. Id. at 90. At the time this suit was initiated, the system used by the Jail could store recorded phone calls for approximately 244 days. Id. at 96-97.

While the Jail's policy was to orally inform inmates of how to place an attorney's number on the List, it appears that sometimes an inmate would be informed only when he specifically asked. Id. at 152. Jail staff also testified that many times an inmate will ask other inmates how to request a private call. Tindal Aff. Ex. L (Soyring Dep.) at 28. Staff also testified that they were not trained on instructing inmates about how to place a number on the List but learned about the process through observation. Tindal Aff. Ex. M (Peterson Dep.) at 27. They stated that it was rare for an attorney's number not to already be included on the established List. Id. Andersen and Holm state that they were never informed at booking about how to request a private phone call with an attorney. Andersen Decl. ¶¶ 4, 5; Holm Decl. [Docket No. 58] ¶¶ 3, 4.

Andersen claims that shortly after meeting with Bulmer and another attorney, he provided the Jail with Bulmer's business card showing his phone numbers, and the Jail made a copy of the card. Andersen Decl. ¶¶ 20, 21. He also provided the Jail with a copy of the business card of Glen Fladmark ("Fladmark"), the investigator his attorneys hired for the case.

Id. ¶ 22.  In the fall of 2007, Andersen and his attorneys began to suspect that the phone calls between them, and Andersen's calls to Fladmark, were being monitored.  Id. ¶ 31.  They tested their theory by having Bulmer tell Andersen over the phone that he would bring narcotics to Andersen during his next visit.  Id. ¶ 32.  Andersen states that Jail staff expressed more interest to him about when Bulmer would next be visiting, searched his cell more often, and searched Bulmer more thoroughly during his next visit than was customary.  Id. ¶¶ 33-35.  Bulmer testified similarly, stating that Jail staff searched him much more thoroughly on the next visit.  Tindal Aff. Ex. K (Bulmer Dep.) at 61-64.  Shortly thereafter, Andersen and his attorneys were informed about the process for placing a number on the List.  Andersen Decl. ¶ 39.

Andersen's attorneys requested that their numbers be placed on the List in late November or early December 2007.  McArthur Aff. [Docket No. 44] Ex. 1.  A few weeks later, the attorneys informed Defendants that their calls were still being monitored.  Id.  Evidence produced in discovery suggests a change in the procedure of how Reliance would block the phone numbers caused some numbers to be omitted from the List.  Id.  Defendants were not aware of Reliance's change in procedure.  Id.  The numbers of Andersen's attorneys, with the exception of the cell phone numbers, were added to the List in early December.  Id.

It is undisputed that because Andersen's attorneys' numbers were not effectively placed on the List, they were subject to monitoring.  Officer Baumann testified that he did listen to an approximately one-minute portion of one call between Andersen and his attorney until he realized that Andersen was speaking to his attorney.  Tindal Aff. Ex. J (Baumann Dep.) at 71, 81.  Defendants have a policy that requires correctional officers to stop listening to a call once they realize it is between an inmate and his attorney.  Tindal Aff. Ex. B (Omnibus Hr'g Tr.) at 126.

Officer Baumann also testified that after he listens to an attorney call, he looks through the remainder of the call log in storage and deletes all the calls to that number. Id. at 140. Baumann has testified that in the initial portion of the conversation he overheard between Andersen and his attorneys, he never heard any discussions of information concerning the case, witnesses, or trial strategy. Id. at 141. Additionally, he never initiated an investigation or made an inquiry based on information he heard in the calls. Id.

On March 7, 2009, a contested omnibus hearing was held before Judge Peter M. Irvine in Andersen's criminal case. Omnibus Hr'g Tr. at 1. In that hearing, Andersen's attorney raised the issue of the monitored attorney-client phone calls and asked that the indictment be dismissed. Id. at 109. Judge Irvine took testimony from Captain McArthur and Officer Baumann. Id. at 113, 138. Captain McArthur testified about the procedures for making a private phone call at the Jail as well as the mistake in not getting Andersen's attorneys' numbers on the List. Id. at 113-137. Officer Baumann testified at the hearing that he both deleted privileged calls and destroyed CD copies that might contain the recording. Id. at 144. Judge Irvine ordered Defendants to stop recording any calls between Andersen and his attorneys, whether made to cell phones or land lines. Id. at 149.

On June 11, 2008, Judge Irvine issued a memorandum opinion and order determining that the State did not deny Andersen access to his attorney. Tindal Aff. Ex. C (Judge Irvine Order) at 6. Judge Irvine found that law enforcement officials listened to Andersen's calls to his attorney but ceased listening once the official determined it was an attorney-client call. Id. at 7. He found there was no evidence law enforcement officials listened to a conversation after it was determined to be an attorney-client call. Id. He also found there was no evidence that anyone

heard information related to the case. Id. He concluded that there was no evidence of prejudice to Andersen's rights, the practice of recording Andersen's attorney-client calls had stopped, and grounds to dismiss the indictment were lacking. Id.

This federal civil action was filed on October 15, 2008. Compl. [Docket No. 1]. On October 29, Plaintiffs moved for a temporary restraining order seeking to halt Defendants' inmate telephone practices. Motion for Temporary Restraining Order [Docket No. 4]. On October 31, attorneys for the Plaintiffs and Defendants participated in a conference call with the Court, and Defendants were ordered not to intercept calls from the attorneys and attorneys' investigators appearing on behalf of Andersen and Holm. Following a hearing on December 12, 2008, the Court denied the Motion for a Temporary Restraining Order, finding that none of the Plaintiffs were currently incarcerated at the Jail, and they had submitted no evidence or affidavits that the practice of monitoring calls was ongoing. December 12, 2008 Order [Docket No. 29] at 1-2.

Since the filing of the Complaint, Defendants amended the inmate handbook and revised the signs near the inmate telephones. The Amended Handbook provides,

> Inmates may request in writing free and non-recorded telephone calls with their attorney. The request will only be granted after written verification from the attorney of representation. This free and non-recorded call with an attorney will only be granted to a land line, not a cell phone. Inmates may also request a non-recorded telephone call with their attorney's investigator. This request will only be granted after written verification the investigator is licensed and either an employee of the inmate's attorney or has a contract with that attorney.

Hodgson Dep. Ex. 2 (Amended Inmate Handbook) at 9-10. The signs near the phone contain similar language. Id. Ex. 4. The Jail now requires an inmate to fill out a form on which he must

request a private attorney phone call.  Id. at 54, Ex. 6.

## III.  DISCUSSION

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B.    Threshold Issues[3]

Defendants raise a number of threshold issues which they claim bar Plaintiffs' claims. Specifically, they argue that Andersen's claims are barred by collateral estoppel, Andersen's and Holm's claims are precluded by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994), and Bulmer lacks standing to assert his claims.

#### 1.    Collateral Estoppel

---

[3] Plaintiffs have styled their Complaint as a class action.  They have not brought a Rule 23 motion, and the Court will only consider the named Plaintiffs' claims.

A collateral estoppel defense requires that (1) the precluded issue must be the same as in the prior action; (2) the issue must have been litigated; (3) the issue was determined by a valid and final judgment; (4) the determination was essential to the final judgment; and (5) the estopped party must be a party to or in privity with a party to the prior litigation. Mille Lacs Band of Chippewa Indians v. Minnesota, 124 F.3d 904, 922 (8th Cir. 1997). "Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that determination is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." United States v. Mendoza, 464 U.S. 154, 158 (1984). Defendants argue that Judge Irvine's April 13, 2008 Order and June 11, 2008 Memorandum estops Andersen from relitigating these claims because Judge Irvine found the State did not deny Andersen access to his attorney, and hence, his right to a fair trial. Tindal Aff. Ex. C at 6-7.

Plaintiffs argue that collateral estoppel does not apply here because Judge Irvine's finding was that Andersen was not prejudiced by the recording of and limited listening to Andersen's attorney-client phone calls. Id. at 7. Plaintiffs contend that unlike suppression under the Sixth Amendment, which requires a finding of prejudice, a Constitutional violation (sufficient to maintain a civil rights action under 28 U.S.C. § 1983) may occur in the absence of such prejudice. See United States v. Morrison, 449 U.S. 361, 367 (1981). Thus, they maintain, the question before the Court in this case, whether the recording and monitoring of attorney-client phone calls violates constitutional, statutory, and common law principles for purposes of § 1983 liability, was not addressed in Judge Irvine's Order and Memorandum.

Judge Irvine's consideration of the case involved different issues than those presented

here.  Defendants' reliance on <u>Allen v. McCurry</u>, 449 U.S. 90 (1980), and <u>Migra v. Warren City</u> <u>School District Board of Education</u>, 465 U.S. 75 (1984), is misplaced.  In those cases, the plaintiffs sought to relitigate an issue that required the same elements of proof already decided in a prior action.  <u>Allen</u>, 449 U.S. at 102; <u>Migra</u>, 465 U.S. at 84.  Accordingly, the Court found that collateral estoppel barred the subsequent claim.  <u>Allen</u>, 449 U.S. at 103; <u>Migra</u>, 465 U.S. at 84.  In this suit, establishing the elements of the constitutional, statutory, and common law violations does not require a finding of prejudice, which was required to warrant dismissal of the indictments, the issue confronting Judge Irvine.  Collateral estoppel does not bar the majority of Andersen's claims.

There is one exception to this conclusion.  Judge Irvine specifically found that Andersen's right to confidential communication with his attorney pursuant to Minn Stat. § 481.10, subd. 2, was not violated.  Tindal Aff. Ex. C at 6-7.  Accordingly, collateral estoppel bars Andersen's claim under that statute.

## 2. **Heck v. Humphrey**

Defendants next argue that Andersen's and Holm's claims are precluded by the Supreme Court's holding in <u>Heck</u>, 512 U.S. at 486-87.  In <u>Heck</u>, the Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff will necessarily

> imply the invalidity of his conviction or sentence; if it would, the
> complaint must be dismissed unless the plaintiff can demonstrate that
> the conviction or sentence has already been invalidated. But if the
> district court determines that the plaintiff's action, even if successful,
> will *not* demonstrate the invalidity of any outstanding criminal
> judgment against the plaintiff, the action should be allowed to
> proceed in the absence of some other bar to the suit.

Id. (footnotes omitted). Heck does not apply in this case. It is uncontested that neither Andersen nor Holm attacks the validity of their underlying convictions in this suit. A finding of violations of their constitutional rights would not invalidate their state court convictions. Even if a jury were to find that Defendants's recording and monitoring of Andersen's and Holm's attorney-client phone calls violated state and federal common law and the state and federal constitution, Andersen's and Holm's convictions and pleas were not based on any information from those phone calls, and, thus, there could be no prejudice resulting from the illegal recording and monitoring sufficient to render the convictions constitutionally defective. Andersen's and Holm's claims in the current suit are not precluded by Heck.

### 3. Bulmer's Standing[4]

Standing is a "threshold issue in determining whether a Federal Court may hear a case." Republican Party of Minn., Third Congressional Dist. v. Klobuchar, 381 F.3d 785, 791 (8th Cir. 2004). Under Article III of the Constitution, a party bringing a claim bears the burden of establishing that he has standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). At a minimum, standing requires a "case or controversy" in which (1) the plaintiff has suffered a "concrete and particularized" injury in fact that is "actual and imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct

---

[4] Bulmer alleges violations of the First Amendment, the federal and state wiretap statutes, state common law intrusion into seclusion, and state common law attorney-client work product.

complained of;" and (3) the injury must be capable of being "redressed by a favorable decision." Id. at 560 (internal quotations and citations omitted).

Bulmer lacks standing to address his First Amendment claim that his speech with his client has been chilled by the recording and monitoring of the attorney-client calls by the jail staff. The alleged injury is that recording and monitoring "has produced a serious chilling effect upon what [Plaintiffs] are able to communicate to their attorneys via telephone for fear that [the Jail]—and ultimately law enforcement personnel and the prosecution—will be privy to their attorney/client privileged communications." 1st Am. Compl. ¶ 77. Under Supreme Court precedent, a claim of a chilling effect, in and of itself, is not sufficient to establish standing. See Laird v. Tatum, 408 U.S. 1, 13-14 (1972); see also Eckles v. City of Corydon, 341 F.3d 762, 767 (8th Cir. 2003) (recognizing that allegations of a "subjective chill" fail to establish standing and that there must be "a claim of specific present objective harm or a threat of specific future harm") (quotations omitted). In Laird, the Supreme Court considered an action seeking a judicial declaration that alleged surveillance by the Army of "'lawful and peaceful civilian political activity'" was unconstitutional. Id. at 2. In addressing the issue of whether the plaintiffs had standing to pursue their claims, the Court noted:

> In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent, or chilling, effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment Rights. *In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual.* Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively

> subject to the regulations, proscriptions, or compulsions that he was
> challenging.

Id. at 11. (quotations omitted) (emphasis added).  Thus, the Court concluded that "[a]llegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  Id. (quotation omitted).

The District of Columbia Circuit Court of Appeals, in a similar case, held that decisions that have found a chilling effect to be sufficient to confer standing have "involve[d] situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself."  United Presbyterian Church in the U.S.A. v. Reagan, 738 F.2d 1375, 1378 (D.C. Cir. 1984).  The court explained that the "[c]hilling effect is . . . the reason why the governmental imposition is invalid rather than . . . the harm which entitles the plaintiff to challenge it."  Id. at 1378.  In a case that is particularly analogous to the case at bar, the court in Al-Owhali v. Ashcroft held that a plaintiff lacked standing to challenge a federal prison's regulations specifying the contents of a notice that would be provided to a prisoner when the prison had decided to commence monitoring of the inmates communications with his attorney.  279 F. Supp. 2d 13, 17-18 (D.D.C. 2003).  The alleged injury was the chilling effect that the attorney-monitoring regulations would have on the plaintiffs ability to communicate with his attorney.  279 F. Supp. 2d at 26.

Bulmer also lacks standing to bring a claim of misappropriation of attorney work product.  There is no evidence that anyone listened to his conversations with Andersen after it was determined that the calls were between an attorney and client.  No work product of Bulmer's was used by any Defendant, any agents of Defendants, or the State.  Even accepting Bulmer's assertion that his advice has "independent economic value," that advice was never

misappropriated, and, thus, Bulmer has not experienced any injury. Pls.' Mem. in Opp'n to Summ. J. [Docket No. 56] at 43. The misappropriation of attorney-client work product claim is dismissed for lack of standing.

Bulmer has standing, however, to assert his claims under the federal and state wiretap statutes. The statutes forbid recording of a person's phone calls, and, thus, Bulmer has alleged an injury (the recording), causation (the Jail's policies), and redressibility (equitable and legal relief) for these causes of action. Were Bulmer to demonstrate that Defendants' conduct was "highly offensive," see Swarthout v. Mutual Services Life Insurance Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001), he would likewise have standing to pursue an intrusion into seclusion claim.

### 4.    Monell Liability

In their brief, Plaintiffs clarify that they "have never brought individual claims against either Gordon or McArthur; instead[,] Plaintiffs have always maintained claims against them in their official capacity." Pls.' Mem. in Opp'n to Summ. J. at 41. "An official-capacity suit is merely another way of pleading an action directly against the public entity itself." Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)); see also Guzman v. Sheahan, 495 F.3d 852, 859 (7th Cir. 2007) ("An official capacity suit is tantamount to a claim against the government itself."). Under the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658, 690-92 (1978), a governmental entity cannot be held liable under § 1983 merely because its employees committed unconstitutional acts. Instead, Defendants are liable under § 1983 only if their "custom or policy caused the deprivation of the right protected by the Constitution or federal law." Angarita v. St. Louis County, 981 F.2d 1537,

1546 (8th Cir. 1992).

Plaintiffs argue that Defendants have an unconstitutional policy of recording inmates' attorney-client phone calls and of not informing them of how to request a non-recorded and non-monitored phone call. There is no evidence to support this assertion. The County has a policy of requiring all inmates to request in writing a non-monitored call to an attorney. An inmate must give the Jail the number so that the Jail can verify that the number is that of an attorney. Once the number is verified, any calls to that number cannot be monitored. Plaintiffs' attempt to describe the County's "policy" as "not informing inmates how to request a non-monitored call," or "not informing inmates during booking how to arrange an unmonitored call" is an inappropriate stretch of the facts. See Pls.' Mem. in Opp'n to Summ. J. at 40. To the contrary, the record demonstrates that the policy is to provide inmates with such information, but that on occasion, Jail staff might inadvertently fail to inform an inmate about the procedure. Likewise, the vast majority of attorney numbers are placed on the do not record list, and any monitoring appears to be the exception, not the rule. As the Eighth Circuit has recognized, "[a] policy is a *deliberate choice* to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Hayes v. Faulkner County, 388 F.3d 669, 674 (8th Cir. 2004) (quotation omitted) (emphasis added). The apparent inadequacies in the implementation of the Jail's policy and monitoring system do not rise to the level of showing a "deliberate choice" to follow a course of action, and, thus, there is no unconstitutional policy. Cf. Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir. 1996) (en banc) (holding, in a failure to train case, that proving deliberate indifference to establish an unconstitutional policy requires a showing that the governmental entity knew its

procedures were inadequate and likely to result in a violation of constitutional rights).

There is also no evidence that the County has a "custom" of violating inmates' rights. "Monell liability also attaches 'for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.'" Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003) (quoting Monell, 437 U.S. at 690-91)).  To establish such a custom, a plaintiff must show that the alleged constitutional violation was caused by a widespread, persistent pattern of unconstitutional misconduct by government employees that government policy makers either were indifferent to or tacitly authorized.  Larson, 76 F.3d at 1453.  The evidence fails to support an inference of a "custom" at the Jail to violate the inmates rights.  Again, the evidence shows that there were only occasional instances in which an inmate was not informed about how to make a non-monitored phone call to his attorney or when an attorney-client phone call was inadvertently recorded.  Peterson Dep. at 34, Soyring Dep. at 36.

Because Plaintiffs have asserted only official-capacity claims, their claims under § 1983 cannot survive summary judgment unless Plaintiffs can establish liability under Monell.  Having failed to do so, Defendants' Motion for Summary Judgment is granted as to all of Plaintiffs' claims under § 1983.  But assuming for the moment that Plaintiffs could satisfy the requirements of Monell, Plaintiffs' § 1983 claims nonetheless fail for the reasons discussed below.

C.    **Substantive Issues**

Plaintiffs have taken a scatter-gun approach to asserting claims in their Complaint.  As an initial matter, the Court recognizes some general principles of law that courts have applied to inmate challenges to procedures within a penal institution.  First, "when a prison regulation

impinges on an inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Monitoring inmates' phone calls not protected by attorney-client privilege serves a legitimate penological interest in the safety and security of staff and inmates. <u>See</u> <u>United States v. Hammond</u>, 286 F.3d 189 (4th Cir. 2002). Through the monitoring of an inmate's call at the Jail, staff prevented a suicide attempt. Soyring Dep. at 23. When a prison or jail clearly informs an inmate that phone calls may be monitored, the subsequent use of the phone by an inmate implies consent to the call being monitored. <u>See</u> <u>United States v. Gross</u>, 554 F. Supp. 2d 773, 777 (N.D. Ohio 2008); <u>United States v. Gotti</u>, 42 F. Supp. 2d 252, 284 (S.D.N.Y. 1999). Finally, it is uncontested that Becker County has updated its inmate handbook and the language on the signs within the jail to more fully and explicitly inform inmates of how to request a private call to an attorney. Hodgson Dep. <u>Compare</u> Exs. 2 and 4 <u>with</u> Exs. 3 and 5.

There is no dispute that portions of phone calls were listened to by law enforcement. Defendants assert, and Plaintiffs proffer no evidence to rebut, that the investigators stopped listening when they realized that a call was between an inmate and an attorney and that the recording was then deleted. There is also no evidence that the investigators heard any incriminating statements by inmates, and no attorney-client recording was used in the prosecution of Andersen or Holm, nor was any information heard prior to the deletion of the recording used in the prosecutions. With the stage thus set, the Court will analyze the claims.

### 1.      First Amendment

Plaintiffs allege that the monitoring and/or recording of attorney-client privileged telephone conversations has produced a serious chilling effect on the matters about which clients

and attorneys are able to communicate over the phone.  1st Am. Compl. ¶ 77.  Plaintiffs assert

that the mere "fact that the Jail records these privileged communications restricted [their] First

Amendment rights because they could not openly and freely communicate with their attorney."

Pls.' Mem. in Opp'n to Summ J. [Docket No. 53] at 30.  Though not argued by Defendants, the

analysis concluding that Bulmer lacks standing to assert a First Amendment claim based on such

a claimed chilling effect, see supra III.B.3, applies equally to Andersen and Holm.[5]  But even if

Plaintiffs had standing to assert their First Amendment claims, the claims nevertheless fail.

Plaintiffs' contention ignores the alternative means of communicating that were

available.  There was no restriction on their ability to freely and openly communicate with their

attorneys in person or through the mail.  See Samford v. Dretke, 562 F.3d 674, 680 (5th Cir.

2009) (upholding a restriction on inmates ability to communicate with minor children because he

had an alternate means to communicate with them through the mother); Sisneros v. Nix, 884 F.

Supp. 2d 1313, 1329 (N.D. Iowa 1995) (finding that English only policy was not a First

Amendment violation, in part, because it allowed an alternate means of communication to

inmates).  Moreover, at the time they were communicating with their attorneys, they believed

they could make an unmonitored phone call, and, thus, no chilling effect occurred.  If there was

any intrusion into constitutionally protected  rights, it was not a violation of Plaintiffs First

Amendment rights.

### 2.    Fourth Amendment

Andersen and Holm allege that their attorney-client phone calls were monitored without

their consent, in violation of the Fourth Amendment's prohibition against unreasonable searches.

---

[5] Standing is a jurisdictional requirement that a court is obliged to consider sua sponte. See Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).

1st Am. Compl. ¶¶ 79-83.  In determining whether a jailhouse search is unreasonable, a court must balance "the need of the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  When the search involves an inmate, a court should balance the legitimate penological interest against the privacy interests of the inmate.  Id. at 560 (upholding a requirement that inmates undergo a visual body cavity search).

Defendants argue they have a legitimate penological interest in recording inmate phone calls.  Plaintiffs respond that regardless of the legitimacy of the interest, recording attorney-client phone calls does not further that interest.  Courts examining similar issues have focused on the question of consent.  In United States v. Novak, 531 F.3d 99, 101 (1st Cir. 2008), Justice O'Connor, sitting by designation, confronted a situation in which jail staff monitored attorney-client phone calls and then used that information against the defendant.  The defendant sought to suppress the evidence arguing that the monitoring violated the Fourth Amendment.  Id.  The District Court agreed, but the First Circuit reversed.  Id.

Justice O'Connor wrote that the court was "troubled" by the monitoring and use of attorney-client phone calls but found no Fourth Amendment violation because the defendant consented to the monitoring.  Id. at 102.  The court based its consent finding on (1) the signs posted by the phones, which stated that "[c]alls are subject to monitoring and recording"; and (2) the automated message played at the beginning of every call warning the inmate that the call is subject to monitoring and recording.  Id. at 100.  There was a process through which an attorney number could be exempted, but because of a mechanical error, the calls were mistakenly

19

monitored.  Id.  The First Circuit recognized that the defendant may have a protected interest in the privacy of attorney-client phone calls, but such an interest does not exist when one party consents to monitoring.  Id.

The case at bar presents a different fact pattern than that in Novak.  In Novak, the defendant was clearly placed on notice that his calls were being recorded and monitored.  Here, a fact question exists concerning whether Andersen and Holm consented to the recording.  There is conflicting testimony about whether they were informed of the procedure to request a private attorney phone call.  Taking the evidence in the light most favorable to Plaintiffs, and given the notice that was by the telephones indicating that all calls were subject to monitoring and recording *except attorney calls*, a fact-finder could conclude that Andersen and Holm did not consent to such monitoring.

Defendants argue that even if there was a violation, they are immune from suit based on qualified immunity.  Qualified immunity does not apply because Defendants are being sued solely in their official capacity.  See Kentucky v. Graham, 473 U.S. 159, 167 (1985) (holding that qualified immunity is unavailable to a defendant sued in his official capacity).  However, because Plaintiffs have failed to establish Monell liability on their § 1983 official-capacity claims, as discussed supra III.B.4, Andersen's and Holm's Fourth Amendment claims cannot survive summary judgment.

3.      **Fifth Amendment**

Andersen and Holm allege that statements they made in monitored phone calls to their attorneys were used against them and violated their right against self-incrimination under the Fifth Amendment.  1st Am. Compl. ¶¶ 84-89.  There is no evidence that any information from an

attorney-client phone call was used against either Andersen or Holm.  Plaintiffs argue that they

are unable to present any evidence of self-incriminating statements because Defendants

destroyed evidence of wrongdoing, and the Court should therefore make an adverse inference

about the lack of evidence.  No such inference is warranted in this case.  In determining whether

an adverse inference should be made, courts consider "(1) whether the record retention policy

was reasonable considering the facts and circumstances surrounding those documents, (2)

whether lawsuits or complaints have been filed frequently concerning the types of records at

issue, and (3) whether the document retention policy was instituted in bad faith."  Stevenson v.

Union Pacific R.R. Co., 354, F.3d 739, 746 (8th Cir. 2004).

At the time this suit was filed, the Jail phone system could maintain phone calls for

approximately 244 days before the information would automatically be recorded over.  Hodgson

Dep. at 94.  The retention is based entirely on storage capacity and reasonable.  There is also no

indication that there have been other lawsuits or complaints involving the policy and no

indication it was implemented in bad faith.  The omnibus hearing before Judge Irvine took place

on March 7, 2008, at which point no further monitoring and recording of Plaintiffs' attorney-

client phone calls took place pursuant to a court order, and Plaintiffs did not commence this suit

until October 15, 2008.  The time between these two events approaches the 244-day limit of the

equipment.  Plaintiffs made no effort to seek retention of the recorded calls prior to their

deletion.  Andersen's and Holm's Fifth Amendment claims fail.

### 4. Sixth Amendment

Andersen and Holm argue that the recording and monitoring of their attorney-client

phone calls violates their Sixth Amendment right to counsel.  1st Am. Compl. ¶¶ 90-93.  To raise

a successful § 1983 claim for the violation of the Sixth Amendment, Plaintiffs must demonstrate that there was an intrusion into the attorney-client communication and that there was some prejudice to them. Weatherford v. Bursey, 429 U.S. 545, 558 (1977). In Weatherford, the Court found no § 1983 violation when an undercover law enforcement officer participated in a meeting between the defendant and his attorney. Id. at 560. The Court found that there was no tainted evidence, no communication of defense strategy to the prosecution, and no purposeful intrusion into the defendant's rights. Id. Thus, there was no violation of the Sixth Amendment. Id.

In this case, there is no evidence that any officer listened to phone calls between Plaintiffs after the call was identified as being between an attorney and client. Baumann Dep. at 68-69; Omnibus Hr'g Trans. at 126, 138. Andersen and Holm were not prejudiced by the recording and monitoring of their phone calls as no information overheard in the phone conversations was ever used against them. These circumstances mirror those in United States v. Noriega, 764 F. Supp. 1480 (S.D. Fla. 1991). In Noriega, the jail holding Noriega had a procedure through which Noriega could make a non-monitored call to his attorney, but there was evidence that Noriega was unaware of the procedure. Id. at 1485-86. Noriega made a monitored call and law enforcement officers overheard conversations between Noriega and his attorney. Id. The Noriega court found that the intrusion was unintentional and there was no prejudice against Noriega because the substance of the calls was not used against him. Id. at 1489. Accordingly, the court dismissed the § 1983 claim finding no violation of the Sixth Amendment. Id. Here, too, because there was no intentional intrusion and no prejudice to Andersen and Holm, summary judgment is appropriate for Defendants on the Sixth Amendment claim.

     **5.**       **Fifth and Fourteenth Due Process**

Andersen and Holm allege that the recording and monitoring of their attorney-client phone calls was a substantive violation of their Fifth Amendment Due Process rights as incorporated against Defendants through the Fourteenth Amendment. 1st Am. Compl. ¶¶ 94-95. "The standard for evaluating a substantive due process claim is whether the alleged behavior of the governmental officer is so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience." Cavataio v. City of Bella Villa, 570 F.3d 1015, 1022 (8th Cir. 2009).

Plaintiffs cite several cases in which courts have expressed concern and condemnation when attorney-client communications have been monitored by law enforcement. The majority of these cases, however, involved a situation in which the defendant was prejudiced by the conduct of law enforcement. See State v. Sugar, 417 A.2d 474 (N.J. 1980); Matter of Kozak, 256 N.W.2d 717 (S.D. 1977); Cody v. Weber, 256 F.3d 764 (8th Cir. 2001). In the other two cases cited by Plaintiffs, the defendants brought claims alleging a Sixth Amendment violation of the right to counsel and were decided before the prejudice requirement was articulated in Weatherford. See Fajeriak v. State, 520 P.2d 795 (Alaska 1974); Coplon v. United States, 191 F.2d 749 (D.C. Cir. 1951). Because neither Andersen nor Holm were prejudiced by any monitoring of their attorney-client phone calls and there is no evidence that the monitored conversations were deliberately overheard by law enforcement rather than as a result of a glitch in the process of adding phone numbers to the (do not intercept) List, Defendants' behavior does not "shock the conscience," and, therefore, there is no substantive due process violation.

### 6.     Federal Common Law

Andersen and Holm allege that Defendants violated federal common law by denying them access to the recorded phone calls, which was favorable or material to their defense and/or

was exculpatory. 1st Am. Compl. ¶¶ 99-105. In <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "the Supreme Court held that due process requires the government to disclose to the defense all evidence favorable to the accused." <u>United States v. Vieth</u>, 397 F.3d 615, 619 (8th Cir. 2005). "To find a <u>Brady</u> violation, evidence must be material and exculpatory and have been suppressed by the government." <u>Id.</u> There is no evidence in the case at bar the government suppressed any recordings that were material or exculpatory. Additionally, because Plaintiffs were parties to any phone call, they would be aware of any material or exculpatory information disclosed and could direct the Court to such evidence. They have failed to do so. There is no violation of federal common law.

### 7. Minnesota Constitutional Violations

Andersen and Holm allege violations of Article I, Sections 6, 7, and 10 of the Minnesota Constitution. 1st Am. Compl. ¶¶ 79-83, 90-95. Their due process claims under Article I, Section 7 fail because the due process protections under the federal and Minnesota constitutions are co-extensive. <u>Sartori v. Harnischfeger Corp.</u>, 432 N.W.2d 448, 453 (Minn. 1988). Because they cannot state a claim under the federal Due Process Clause, they cannot state a claim under the state Due Process Clause. Additionally, Minnesota courts have not recognized a private right of action for a violation of the Article I, Section 7 of the Minnesota Constitution. <u>See</u> <u>Oehrleins & Sons & Daughters, Inc. v. Hennepin County</u>, 922 F. Supp. 1396, 1400 (D. Minn. 1996) (citing <u>Bird v. State Dep't of Pub. Safety</u>, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985)), <u>reversed</u> <u>on</u> <u>other</u> <u>grounds</u> 115 F.3d 1372 (8th Cir. 1997); <u>see</u> <u>also</u> <u>Thomsen v. Ross</u>, 368 F. Supp. 2d 961, 975 (D. Minn. 2005) ("Minnesota has not enacted a statute equivalent to § 1983, although Minnesota courts have recognized direct causes of action for violating certain sections of the Minnesota

Constitution.").  Moreover, in the event that the Minnesota courts were to recognize such a right, the Court believes the Minnesota courts would analyze that right similarly to the analysis of the Sixth Amendment right.  See Friedman v. Commissioner of Pub. Safety, 473 N.W.2d 828, 833 (Minn. 1991) (incorporating the Sixth Amendment analysis of when the right to an attorney attaches for purposes of the parallel right provided by state law); see also Butala v. State, 664 N.W.2d 333, 344 (Minn. 2003) (recognizing the similarities between the right to counsel under the Sixth Amendment and the parallel right under Article I, Section 7).  Because there is no Sixth Amendment violation, there is no corresponding Article I, Section 7 violation.  Finally, Andersen's and Holm's unreasonable search claims under the Minnesota Constitution fail because Minnesota does not recognize a private cause of action under Article I, Section 10.  See Guite v. Wright, 976 F. Supp. 866, 871 (D. Minn. 1997); see also Luckes v. Hennepin County, No. 03-31111, 2004 WL 1683145, at *4 (D. Minn. July 28, 2004); Goldberg v. Hennepin County, No. 03-3110, 2004 WL 1386154, at *3 (D. Minn. June 18, 2004).  Accordingly, none of Plaintiffs' claims under the Minnesota Constitution survive summary judgment.

### 8.     Minn. Stat. § 481.10, Subd. 2

Holm alleges Defendants violated Minn Stat. § 481.10, subd. 2, by denying his right to a private and confidential phone call to his attorney.  1st Am. Compl. ¶¶ 106-08.  Section 481.10, subd. 2 provides that when a defendant is restrained by law enforcement, the state "shall provide private telephone access to any attorney retained by or on behalf of the person restrained, or whom the restrained person may desire to consult at no charge to the attorney or to the person restrained."  The Minnesota Court of Appeals has found that the proper remedy for a violation of § 481.10, subd. 2 is the suppression of any statements overheard by the police.  Koester v.

Commissioner of Pub. Safety, 438, N.W.2d 725, 727 (Minn. Ct. App. 1989); see also Sherbrooke v. City of Pelican Rapids, No. 05-671, 2006 WL 3227783, at *13-14 (D. Minn. Nov. 7, 2006) (overruled on other grounds). Suppression is not a remedy since this is a civil action for legal and equitable relief. No other remedy has been recognized by the Minnesota courts. Accordingly, Holm's claim under Minn Stat. § 481.10, subd. 2 is dismissed.

9.  **Minnesota Common Law**

Plaintiffs assert claims under Minnesota common law for the tort of intrusion upon seclusion. 1st Am. Compl. ¶¶ 112-18. Under Minnesota law, the tort of intrusion upon seclusion has three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." Swarthout, 632 N.W.2d at 744. The recording of Plaintiffs attorney-client calls may be an intrusion into a matter in which there is a legitimate expectation of privacy, but the intrusion was not highly offensive as a matter of law. The reasonable person standard is used to determine whether an intrusion is highly offensive and becomes a question of law when a reasonable person could only draw one conclusion based on the evidence. Id. at 745. While the Minnesota courts have yet to fully delineate the boundaries of the tort of intrusion into seclusion, the Court does not believe that a reasonable person could conclude that the limited monitoring of the phone calls in this instance was highly offensive. The standard appears to be analogous to the "shock the conscience" analysis employed in substantive Due Process claims. The evidence shows that Defendants did not deliberately record the attorney-client calls but rather that any recording was inadvertent and the result of a breakdown in the process through which an inmate could secure a private phone call. Moreover, the record indicates that Defendants ceased listening to the calls when it became

evident that the calls were between an attorney and client.

### 10. Wiretap Statutes

Plaintiffs' final two claims are that Defendants violated the federal and state wiretap statutes, respectively, 18 U.S.C. §§ 2510-22 and Minn. Stat. § 626A.02, by recording and monitoring their attorney-client phone calls without their consent. 1st Am. Compl. ¶¶ 96-98, 109-11. The parties have filed cross-motions for summary judgment on these claims. The federal and state wiretap statutes are nearly identical. Wagner v. Wagner, 64 F. Supp. 2d 895, 899 (D. Minn. 1999) (citing Copeland v. Hubbard Broad., Inc., 526 N.W.2d 402, 406 (Minn. Ct. App. 1995)). Both statutes provide a civil remedy for individuals whose communications are intercepted. Compare 18 U.S.C. § 2520 with Minn. Stat. § 626A.02, subd. 5.[6] Pursuant to 18 U.S.C. § 2511(1)(a), anyone who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be subject to suit as provided in subsection (5)." Subsection 5 creates a civil cause of action for any violation of the statute. 18 U.S.C. § 2520(a).

Defendants argue that two exceptions apply in this case. The first arises under the definition of "electronic, mechanical, or other device," which excludes "any equipment or facility used "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). Defendants argue that it is standard law enforcement practice to monitor inmate calls. See Lanza v. State of New York, 370 U.S. 139, 143 (1962). While the Court agrees that the ordinary course of a law enforcement officer's duties include, in the abstract, the monitoring of inmate communications, the monitoring of an inmate's phone call

---

[6] Because the statutes are virtually identical, the Court will analyze both types of claims under the federal wiretap statute.

with his attorney is not in the ordinary course of duties. Such communications are constitutionally protected, and, on this record, there is nothing to support a showing that monitoring the specific type of communications that are the subject of this action would serve a legitimate law enforcement purpose. For this reason, the exception does not apply.

The second exception under the statute provides that "[i]t shall not be unlawful under this chapter for a person acting under color of state law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Other courts that have addressed the issue have held that express or implied consent to having a call monitored by the prison falls within the § 2511(2)(c) exception. United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000); Gilday v. Dubois, 124 F.3d 277, 298 (1st Cir. 1997). In this case, however, there was no express consent to monitoring inmate attorney-client phone calls. Plaintiffs did not sign a form acknowledging consent. See Footman, 215 F.3d at 155. Nor, taking the evidence in the light most favorable to Plaintiffs, can consent be implied. As noted in the Fourth Amendment analysis, see supra III.C.2, there is an unresolved question as to whether Andersen and Holm consented to monitoring. This fact question precludes both Plaintiffs' and Defendants' Motions for Summary Judgment on the claims under the wiretapping statutes.

### IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants Becker County, Tim Gordon, and Joseph H. McArthur's Motion for Summary Judgment [Docket No. 38] is **GRANTED IN PART** and **DENIED IN**

**PART**;

2.      Plaintiffs Kenneth E. Andersen, Dell D. Holm, and William K. Bulmer, II's

        Motion for Summary Judgment on Counts VI, VIII, and IX [Docket No. 47] is

        **DENIED**; and

3.      Counts I, II, III, IV, V, VII, VIII, X, XI of the First Amended Complaint [Docket

        No. 3] are **DISMISSED**.[7]

                                            BY THE COURT:


                                            _____s/Ann D. Montgomery_____
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated:  September 28, 2009.

---

[7] For clarity, the only surviving claims are Count VI and Count IX.